**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ANGEL ROSARIO-SANCHEZ,**<br><br>　　　　　　**Plaintiff,**<br><br>　　　v.<br><br>**CORPORAL H. SOLIS & DR. IBRAHIM,**<br><br>　　　　　　**Defendants.** | **Civil Action No.: 23-3687 (ES) (JSA)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Plaintiff Angel Rosario-Sanchez is proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983. (*See* D.E. No. 1 ("Complaint" or "Compl.")). The Court has screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether the Court should dismiss it, as frivolous or malicious, for failure to state a claim upon which the Court may grant relief, or because it seeks monetary relief from a defendant who is immune from suit. For the reasons below, the Court concludes, with the following caveats, that dismissal of the entire matter is not warranted at this time.

**I.    BACKGROUND**

Plaintiff is an inmate at the Hudson County Correctional Center in Kearny, New Jersey. (*See* Compl. at 4). In the Complaint, Plaintiff alleges that the following events took place between August 19, 2022 and September 5, 2022:

> Plaintiff became ill (symptoms of vomiting and cannot hold anything down such as meds, food & fluids) after eating his lunch[,] which was a baloney sandwich with salad. Plaintiff brought his concerns to his Pod Officer[,] Corporal H. Solis[,] who just ignored his request to be seen by medical and kept responding to his requests by stating: "Stop being a big baby, Rosario. Oh my God, what do you want with my life? No, I am not calling a Code White for you."

(A Code White is a Hudson County Department of Corrections code for a medical emergency, officers and/or supervisors call the code with the pod location over the radio to Center Control who dispatches the Medical Department to the location).

After a few days, Plaintiff was seen by Dr. Ibrahim who prescribed Plaintiff antibiotics to stop the symptoms. [The] symptoms [ ] worsened[,] and Plaintiff informed his Pod Officer again about his symptoms and was refused for weeks to receive medical attention.

Plaintiff [got] the attention of Sergeant Straub[,] a supervisor who was working Monday, September 5, 2022[,] which was Labor Day[,] and the building happened to be on lockdown due to a shortage of staff. Plaintiff told Sgt. Straub that he had chest pain and needs to go down to medical. Sgt. Straub was reluctant to take Plaintiff to medical and believed that the Plaintiff was faking his pain.

Plaintiff was taken to Alpha-100-Medical and was seen by Dr. Fidelia Fmadu, APN from Wellpath Medical Services . . . . [S]he ordered an EKG which in return showed abnormal signs that something was clearly wrong with the Plaintiff. She ordered the correctional police officers to take Plaintiff to . . . Jersey City Medical Center in Jersey City, New Jersey.

[At Jersey City Medical Center,] Plaintiff received an ultrasound which determined that Plaintiff had an infected gallbladder with stones and required surgery to remove it. A doctor [there] informed Plaintiff that the antibiotics that Plaintiff received by Wellpath Medical staff worsened the conditions of his infection. Plaintiff received gallbladder surgery on Wednesday, September 7, 2022 at 2:00AM and was told . . . to return to Jersey City Medical Center to see his surgeon for a follow up appointment in 2 weeks.

Almost a year has passed since the surgery. Plaintiff inquired numerous medical staff about the follow-up appointment and was told that whoever uploaded the documents from . . . Jersey City Medical Center [ ] did not upload the notes saying that Plaintiff has to return[.] Plaintiff knows that he asked the nursing staff at the hospital if it is on the papers and which they double-checked and said yes. Dr. Ibrahim was the doctor who saw Plaintiff after coming back from the hospital.

Plaintiff submitted numerous request forms to medical staff about a follow-up and was denied to see a doctor or someone from Health Services Administration. Recently, Plaintiff spoke to Ms. Maxim

>Casas, the Director of Nursing at Wellpath Medical Services and was told the same answer from other staff. To this day, Plaintiff has not gone to his medical appointment and is worried that he might have to get a second surgery after finding out a similar incident happened to another inmate at the facility.

(*Id.* at 4–5).

Plaintiff initiated this action on or around February 2, 2023. The Complaint names Corporal H. Solis and Dr. Ibrahim as Defendants. (*Id.* at 4).

## II.   STANDARDS OF REVIEW

District courts must review complaints in civil actions in which a prisoner or pretrial detainee is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(a), or brings an action with respect to prison conditions, s*ee* 42 U.S.C. § 1997e(c). District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which the court may grant relief, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1).

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2)(B), 1915A(a), or 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). A court properly grants a motion to dismiss pursuant to Rule 12(b)(6) "if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citation omitted).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "'sufficient factual matter' to show that the claim is facially plausible." *See Fowler v. UPMC*

3

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### III.    DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. (*See* Compl.). To state a claim for relief under Section 1983, a plaintiff must allege: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

Here, the Court construes the Complaint as asserting inadequate medical care claims under the Eighth or Fourteenth Amendment[1] against Corporal Solis and Dr. Ibrahim.[2] However, for the reasons below, the Court will permit the Complaint to proceed at this time against Corporal Solis, only.

#### A.    Inadequate Medical Care Claims

To state a claim of inadequate medical care in violation of the Eighth or Fourteenth Amendment, an inmate must generally allege facts showing (i) a serious medical need, and (ii)

---

[1]    Although Plaintiff refers to himself as an "inmate," it is not entirely clear from the Complaint whether Plaintiff is a pretrial detainee or a convicted prisoner.

[2]    As currently pled, the Court does not construe the Complaint as asserting a state law claim for medical malpractice or negligence against Dr. Ibrahim because the Complaint is devoid of allegations regarding a duty of care or breach of duty. *See Komlodi v. Picciano*, 89 A.3d 1234, 1246 (N.J. 2014). Moreover, even if the Court did construe the Complaint as asserting such a claim, it would fail to state a claim because it contains insufficient facts regarding the nature of the duty of care and breach of that duty to make such a claim plausible. *See Iqbal*, 556 U.S. at 678. In any event, if Plaintiff intended to bring such a claim, he may cure these deficiencies in an amended complaint as indicated in the order accompanying this opinion.

acts or omissions by prison officials that indicate deliberate indifference to that need. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). A court may also determine the seriousness of the inmate's medical need by reference to the effect of denying a particular treatment. *Id.* A condition is serious if denial of a particular treatment would cause death, degeneration, or extreme pain. *See id.*

Deliberate indifference is a "subjective standard of liability consistent with reckless as that term is defined in *criminal* law." *See Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (emphasis added). To be liable, the prison official must know of and disregard an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). A plaintiff, therefore, must plead enough factual matter to allow the court to infer reasonably that the official was subjectively aware of a substantial risk of serious harm and that the official disregarded that risk. *See id.*; *Iqbal*, 556 U.S. at 678.

Moreover, "mere disagreement as to the proper medical treatment" is insufficient to support an Eighth Amendment claim. *Lanzaro*, 834 F.2d at 346. In cases where the complaint alleges inadequate medical treatment as opposed to a complete denial or delay of medical care, courts "presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017). Accordingly, at the pleading stage in such cases, "the plaintiff must allege that the treatment

violated professional standards of care, in addition to alleging that the defendant acted with the requisite state of mind [deliberate indifference] when providing that inadequate care." *McGinnis v. Hammer*, 751 F. App'x 287, 290 (3d Cir. 2018) (citing *Pearson*, 850 F.3d at 535); *see Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (affirming district court's dismissal of Eighth Amendment inadequate medical care claim brought by *pro se* inmate because the inmate failed to allege the course of treatment in question fell below any professional standard of care); *Young v. Halligan*, 789 F. App'x 928, 930–31 (3d Cir. 2019) (same).

### i. Claim Against Corporal Solis

As to Corporal Solis, Plaintiff alleges that he "brought his concerns" to the corporal after he came ill with symptoms of vomiting after eating a baloney sandwich and salad for lunch. (Compl. at 4). Plaintiff also alleges that, after he was seen by Dr. Ibrahim, his symptoms worsened, and he "informed his Pod Officer again about his symptoms and was refused for weeks to receive medical attention." (*Id.*).

Here, there is no doubt that Plaintiff alleges a serious medical need because he had a gallbladder infection and stones that required the removal of his gallbladder. (*See id.* at 5). Less clear is whether Plaintiff alleges that Corporal Solis had the requisite state of mind. For example, Plaintiff's allegation that he informed Corporal Solis about a single instance of throwing up his lunch is, by itself, an insufficient basis for the Court to infer reasonably that Officer Solis knew of a substantial risk of serious harm to Plaintiff. *See Farmer*, 511 U.S. at 836–37. However, Plaintiff's additional allegations that his symptoms worsened; that he told his Pod Officer, Corporal Solis, about his symptoms again; and that Plaintiff was refused medical attention for weeks, leads this Court to conclude that the allegations against Corporal Solis are sufficient to survive this initial screening.

      **ii.**      **Claim Against Dr. Ibrahim**

As to Dr. Ibrahim, the Court reaches a different conclusion. Plaintiff merely alleges that Dr. Ibrahim prescribed antibiotics to stop the symptoms but that the symptoms later worsened. (Compl. at 4). Plaintiff also alleges that another doctor later told Plaintiff that the antibiotics worsened the infection. (*Id.* at 5). These allegations, without more, do not constitute deliberate indifference. For example, Plaintiff pleads insufficient facts from which the Court could reasonably infer that Dr. Ibrahim knew of a substantial risk of serious harm to Plaintiff or that Dr. Ibrahim disregarded such a risk. *See Farmer*, 511 U.S. at 836–37. Moreover, as pled, Dr. Ibrahim treated Plaintiff, and Plaintiff fails to allege or plead facts such that the Court could infer that Dr. Ibrahim violated professional standards of care. *McGinnis*, 751 F. App'x at 290. Accordingly, the Court dismisses Plaintiff's claim against Dr. Ibrahim without prejudice for failure to state a claim.

**IV.**    **CONCLUSION**

For the reasons stated above, the Court dismisses Plaintiff's Section 1983 claim against Dr. Ibrahim without prejudice. Plaintiff's Section 1983 claim against Corporal Solis may proceed at this time. An appropriate order follows.

Dated: July 29, 2024                                           *s/ Esther Salas*
                                                                           **Esther Salas, U.S.D.J.**